IN RE FREDERICK A. FLINT.

May Term, 1938.

Present: MOULTON, SHERBURNE, BUTTLES and STURTEVANT, JJ., and CLEARY, Supr. J.

Opinion filed October 4, 1938.

*Lawrence C. Jones,* Attorney General, for the State.

*Fred E. Gleason* for the respondent.

*Osmer C. Fitts* as *amicus curiae* on behalf of the committee on the unauthorized practice of the law of the Vermont Bar Association.

STURTEVANT, J. This matter comes here on presentment to this Court by the attorney general. The presentment charges that Frederick A. Flint of St. Johnsbury is guilty of contempt of this Court for that, never having received the oath of an attorney at law of this Court, he, the said Frederick A. Flint, has intruded himself in the office of an attorney of this Court and has unlawfully pretended to the office of an attorney of this Court for reasons set forth in said presentment which may be briefly stated as follows:

Said Flint is now, and, at all times material herein has been, sheriff of Caledonia County. On or about the 21st day of Novem-

ber, 1937, one Wendell Pike was confined in the Caledonia County jail by said Flint by authority of a warrant issued by the Caledonia municipal court, docket No. 7808. While Pike was so confined on or about the last above named date, said Flint advised him (Pike) that he, the said Pike, had a cause of action against one Howard F. Whipple for the alienation of the affections of said Pike's wife and that said Pike had a good chance of getting money from said Whipple for two letters which Whipple had written to Pike's wife, and said Flint represented that he could effect a settlement of this matter. At Flint's request said Pike thereupon signed a power of attorney authorizing said Flint to negotiate and settle said claim. Flint then got in touch with Whipple who came to Flint's office in the county jail at St. Johnsbury at which time Flint brought Pike to the office also. Flint instructed Pike to "put on a sad act" and to tell Whipple he would settle his claim for two thousand dollars. Flint then negotiated with Whipple and advised him to settle with Pike, telling Whipple that he, Flint, believed Pike had a case against him. Flint advised Whipple that the best thing for him to do was to settle with Pike for one thousand dollars which sum Flint advised Pike to accept in settlement of said claim. On November 22, 1937, acting on the advice of said Flint, Whipple paid to said Flint one thousand dollars in settlement of said Pike claim and took a general release signed by said Pike releasing said Whipple from all liability whatsoever. This release was signed by Pike upon the advice of and at the request of said Flint. Flint, upon receipt of the one thousand dollars from Whipple, delivered to him said release and certain letters which Whipple had written to Pike's wife. At the time of said settlement, Flint told Whipple to keep this transaction quiet and not to mention it to any one. Prior to the time of the aforesaid settlement, said Whipple, at the request of said Flint, signed a power of attorney, authorizing said Flint to make settlement with said Pike of any and all claims that said Pike might have against him, Whipple. After said Flint had received said one thousand dollars he used forty-two dollars thereof to settle and adjust a claim of one Taplin against Pike; also fifty-seven dollars and fifty-one cents to pay the costs of prosecution in the case "State v. Wendell Pike," Caledonia municipal court, docket No. 7808. A *nolle prosequi* had been entered in this case Novem-

ber 2, 1937. Of said one thousand dollars said Flint also used thirty-five dollars to settle and adjust a suit instituted by E. G. McClallen, an attorney of Rutland, Vermont, brought for Burke Brothers Garage of Rutland against said Pike, which suit was then and there pending at the time of said settlement. Flint also used five dollars and fifty cents to settle the claim of Gilman Brothers Garage of St. Johnsbury against said Pike. Said Flint made a charge for all the services above mentioned and the amount charged was also deducted from said one thousand dollars.

 The respondent has demurred to the presentment, thereby raising the question whether the allegations as above set forth charge the respondent with the unauthorized practice of law, because the demurrer admits the truth of all facts which are well pleaded in the presentment. *In re Austin Ripley,* 109 Vt. 83, 85, 191 Atl. 918; *State* v. *Bissell,* 106 Vt. 80, 87, 170 Atl. 102. That is, the question here is, what constitutes the practice of law, and do the acts of the respondent as charged in the presentment, or some of them, come within the definition of such practice.

 In considering this question it has been held that "It [practice of law] is not confined to performing services in an action or proceeding pending in courts of justice; but in a larger sense includes legal advice and counsel and the preparation of legal instruments and contracts by which legal rights are secured, although such matter may or may not be depending in a court." 49 C. J. 1315, citing *People* v. *People's Trust Co.,* 180 App. Div. 494, 496, 167 N. Y. S. 767; *Eley v. Miller,* 7 Ind. App. 529, 535, 34 N. E. 836; *Matter of Pace,* 170 App. Div. 818, 156 N. Y. S. 641, 646. Also, see *In re Austin Ripley,* 109 Vt. 83, 86, 191 Atl. 918.

Concerning this question, it is held in Illinois that "practicing as an attorney or counselor at law, according to the laws and customs of our courts, is the giving of advice or rendition of any sort of service by any person, firm or corporation when the giving of such advice or the rendition of such service requires the use of any degree of legal knowledge or skill." *People ex rel. Ill. State Bar Assoc.* v. *People's Stock Yards State Bank,* 344 Ill. 462, 176 N. E. 901, 907.

In *In re Duncan,* 83 S. C. 186, 189, 65 S. E. 210, 211, 24 L. R. A. (N. S.) 750, 18 Ann. Cas. 657, it is stated that the prac-

tice of law includes "all advice to clients and all actions taken for them in matters connected with the law." The circumstances in the Duncan case were as follows: Duncan had been disbarred from the practice of law in South Carolina. After such disbarment, he accepted employment from one Nita Saunders in the matter of attempting to get her husband released from the chain gang in that state where the said Saunders was then serving time in accordance with a sentence imposed upon him by one of the courts of that state. For this service he was to receive the sum of fifteen dollars, five dollars of which was paid him by Mrs. Saunders at the time his services were engaged. Concerning this matter the court stated: "The conclusive fact is that Duncan advised Nita Saunders, and acted for her, as his client, for the consideration of five dollars, in a matter not only connected with the law, but unconnected with any other subject except the administration of the criminal law. This was practicing law in violation of the order of this court."

It is also held in New York that an agreement between property owners and one not an attorney that the latter should endeavor to secure a reduction of an assessment and that he should retain lawyers and experts and pay them is in contravention of public policy, because one so doing is engaged in practicing law without authority. *People ex rel. Holzman* v. *Purdy,* 162 N. Y. S. 65.

In *Meunier* v. *Bernich,* (La. App.) 170 So. 567, the court holds that a claim adjuster's contract to enforce, secure, settle, adjust or compromise parents' claim for death of their child, under which contract the adjuster was required to examine the facts and to advise the parents regarding the liability of the railroad whose dynamite caused the death, was held to be illegal and against public policy, on the ground that the adjuster attempted to perform services which only an attorney was entitled to render, thus illegally practicing law; and hence the adjuster could not recover for services rendered.

Also in *Mandelbaum* v. *Gilbert & Barker Mfg. Co.,* 290 N. Y. S. 462, 160 Misc. 656, the court stated that one who renders an opinion as to the proper interpretation of a statute, or gives information as to what judicial or *quasi* judicial tribunals are deciding, and receives pay for it, is, to that extent, "practicing law."

In the case *Re William H. Carney,* 71 Vt., Appendix, 501, 509, this court held: ''No one should be permitted to act as an attorney in any matter unless he is within the rules prescribed by law.'' That protection of the public is the reason for this rule is too apparent to need citation or comment.

The office of an attorney is an important one. He represents the interests and stands in the place of his clients. Great matters are entrusted to his care, and it is necessary that sufficient regulations be had with reference to them. An unqualified person in his practice is not under oath, nor has he ever satisfied the court of his qualifications and ability to practice. He is not learned in the law. He is not under the supervision or control of the courts, nor can he be reprimanded or disbarred for any unprofessional conduct. The public has a right to be protected against the unauthorized practice of the law by unqualified persons.

It is plain that when respondent advised Pike as to Pike's right of action against Whipple and that he, respondent, could effect a settlement and then proceeded to negotiate a settlement under the circumstances set forth in the presentment, and made a charge for such services, respondent was dealing with matters connected with the law and was acting as an attorney. In other words, he was practicing law. The respondent contends that all of the acts charged refer to one single transaction and hence do not constitute the practice of law. This contention is not sound. Even if we accept his interpretation of the allegations set forth in the presentment, this interpretation would have to do with the extent and not the nature of the wrong charged. However, a casual reading of the presentment shows that all of the acts charged therein do not relate to a single transaction. The respondent is charged with negotiating the Pike-Whipple matter, also with the settlement of a suit brought by Burke Brothers Garage of Rutland against respondent, which suit was pending at the time of said settlement. The presentment also charges settlement and adjustment of other matters.

*Respondent's demurrer is overruled.*