268 B.R. 301 (2001)
In re Pamela Kaye, LANDRY, Debtor.
In re Annetta Norine Pearson, James Keith, Pearson, Debtors.
Leigh R. Meininger, Trustee, Plaintiff,
v.
Stacey Burnworth, Paralegal Paperworks, Inc., Defendants.
Bankruptcy Nos. 99-09643-6J7, 99-01125-6J7. Adversary No. 99-00174.
United States Bankruptcy Court, M.D. Florida, Orlando Division.
September 17, 2001.
*302 *303 Kenneth D. Herron, Jr., Orlando, FL, Chapter 7 Trustee.
Leigh R. Meininger, Orlando, FL, Chapter 7 Trustee.
Vinette Morris Hudson, Orlando, FL, for Defendant.
FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING THE DETERMINATION OF REASONABLE FEES OF BANKRUPTCY PETITION PREPARER
KAREN S. JENNEMANN, Bankruptcy Judge.
On June 5, 2001, the Court heard evidence on what constitutes a reasonable fee *304 to pay a bankruptcy petition preparer for preparing bankruptcy pleadings in a consumer Chapter 7 bankruptcy case and to establish guidelines for the determination of reasonable fees for similar cases in the future. These combined cases involve one bankruptcy petition preparer, Stacey Burnworth, and her company, Paralegal Paperworks, Inc. ("Paperworks"). Paperworks prepares bankruptcy petitions and related pleadings for prospective debtors, including the debtors in these cases, Ms. Landry and Mr. and Mrs. Pearson.
The Court previously ruled that Ms. Burnworth was entitled to a fee of $50 for her services on behalf of the debtors. Ms. Burnworth appealed this decision, among others, and the United States District Court for the Middle District of Florida remanded both cases "for an independent finding of what constitutes an appropriate fee for services rendered by Appellant [Burnworth and Paperworks] based on current evidence both for and against any such award of fee, and for the establishment of guidelines which will assist the Bankruptcy Court in the future in carrying out its responsibility under Section 110 [of the Bankruptcy Code] to disallow unreasonable fees." (Adv. No. 99-00174, Doc. No. 49).
Relying to a large extent on the analysis of the District Court, this Court recognizes that in 1994, the Bankruptcy Code was amended, in part, to recognize and to regulate the role of a bankruptcy petition preparer. A petition preparer is defined as "a person, other than an attorney, who prepares for compensation a document for filing." 11 U.S.C. § 110(a)(1). Section 110(h)(1) of the Bankruptcy Code[1] further provides that the bankruptcy court is required to disallow any bankruptcy petition preparer's fee found to be "in excess of the value of services rendered for the documents prepared." 11 U.S.C. § 110(h)(2).
The type of compensable services that a bankruptcy petition preparer can render are extremely limited. Petition preparers, who by definition are not attorneys, cannot give legal advice or otherwise engage in the unauthorized practice of law. In re Guttierez, 248 B.R. 287, 296, n. 25 (Bankr.W.D.Tex.2000) (See cases cited therein). Clearly, as recognized by the District Court, a bankruptcy petition preparer cannot assist the debtor in completing forms, provide legal advice that would assist a prospective debtor in making determinations as to which type of bankruptcy to file or which exemptions to take, or direct clients to particular legal publications or specific pages so that they can attempt to find legal answers on their own. The very act of directing a prospective debtor to review a particular section of a legal book in and of itself constitutes legal advice. By focusing on one answer and excluding others, the bankruptcy petition preparer steps over the line. As stated by the District Court, "Legal advice is legal advice, whether it comes directly from the petition preparer or indirectly via, for example, a bankruptcy treatise being recited by that preparer. Persons seeking legal assistance tend to place their trust in an individual purporting to have expertise in that area." Florida Bar v. Brumbaugh, 355 So.2d 1186 (Fla.1978).
Therefore, a bankruptcy petition preparer can expect to receive compensation only for secretarial-type services. As stated by the United States for the Western District of Texas in Guttierez:

*305 So what does § 110 tacitly permit? The answer in a nutshell is "not much." Section 110 itself proscribes virtually all conduct falling into the category of guidance or advice, effectively restricting "petition preparers" to rendering only "scrivening/typing" services. Anything elsebe it suggesting bankruptcy as an available remedy for a debtor's financial problems, merely explaining how to fill out the schedules, or answering questions about exemptions or whether a claim is or is not secured will invariably contravene either state laws proscribing the unauthorized practice of law or other more specific provisions of § 110. The only service that a bankruptcy petition preparer can safely offer and complete on behalf of a pro se debtor after the enactment of § 110 is the "transcription" of dictated or handwritten notes prepared by the debtor prior to the debtor having sought out the petition preparer's service. Any other service provided on behalf of the debtor by a non-attorney (even telling the debtor where the information goes on the form) is not permitted under state unauthorized practice of law statutes, and so is also not authorized by § 110.
Guttierez, 248 B.R. at 297-98. Thus, under § 110, the services a bankruptcy petition preparer can provide are extremely limited.
A bankruptcy petition preparer can meet a prospective debtor, provide forms or questionnaires for the debtor to complete without any assistance from the bankruptcy petition preparer, transcribe the information supplied by the prospective debtor on the applicable bankruptcy forms without change, correction, or alteration, copy the pleadings, and gather all necessary related pleadings to file with the bankruptcy court. The bankruptcy petition preparer cannot improve upon the prospective debtor's answers, cannot counsel the client on options, and cannot otherwise provide legal assistance to the prospective debtor, directly or indirectly. However, to the extent the bankruptcy petition preparer provides the limited secretarial-type services, the preparer is entitled to receive reasonable compensation.
In light of this standard, the Court next must examine the work performed by Ms. Burnworth and Paperworks in these two cases. The pleadings filed in both cases are very similar. In the Chapter 7 case filed by Pamela Landry, Ms. Burnworth prepared a petition, Schedules, Statement of Assistance, Disclosure of Compensation of the Bankruptcy Petition Preparer, Statement of Financial Affairs, and Statement of Intentions. The total package included 29 pages. Pleadings were prepared using specialized template forms contained on computer software. Most pages required no customization other than to check a box or to add very minimal information. For example, Schedule A required the insertion only of the debtor's name and the word "none." A few pages in the package filed by Ms. Landry required the insertion of additional, more detailed information such as the items and value of the debtor's personal property listed on Schedule B, and the debtor's secured and unsecured creditors listed on Schedules D and F. However, the debtor's assets were very limited, totaling $6,655.00 in value, and the number of creditors was very small. Ms. Landry had three secured creditors with claims totaling $15,048.20, and only five unsecured creditors with claims totaling $9,797.78. The mailing matrix accompanying each bankruptcy filing is generated from the information contained in the schedules themselves and requires no substantial additional information other than the inclusion of a few additional parties, such as the debtor, the Chapter 7 trustee, and, interestingly, *306 Ms. Burnworth herself. Apparently, Ms. Burnworth attempts to monitor each bankruptcy case she files. Ms. Landry paid Ms. Burnworth $275.00 to prepare these pleadings.
The pleadings prepared by Ms. Burnworth on behalf of Mr. and Mrs. Pearson were similar except that all the initial pleadings totaled 33 pages, instead of 29 pages.[2] Mr. and Mrs. Pearson listed several additional unsecured creditors on their Schedule F, which accounts for the slight addition in page numbers. Otherwise, the difference is that in the Pearson case, the debtors actually paid Ms. Burnworth less for her services, $250 as opposed to $275.
During the evidentiary hearing, Ms. Burnworth could not remember these particular debtors or the specific services she performed for them. She maintains no time record or log of actual services provided to any of her clients and could only guess in very broad estimates the amount of time she actually spends on any particular case. (Transcript, page 39.) She had no independent recollection of the work she prepared in either of these two specific cases.
Indeed, the Court finds that Ms. Burnworth's testimony lacked credibility in many instances and appeared designed to inflate the time she spent on an imaginary case in order to obtain a larger fee. For example, Ms. Burnworth testified that she meets extensively with prospective debtors to review and correct their answers and that she and her staff obsessively check and recheck the accuracy of their work. These types of "services" seem designed more to increase the time Ms. Burnworth spends on a case than a legitimate role performed by a bankruptcy petition preparer. Moreover, even ignoring Ms. Burnworth's inflated estimates, her testimony was inconsistent in terms of the time that she spent on a simple Chapter 7 consumer case. Ms. Burnworth testified that she spends anywhere from between five and eight hours on every simple bankruptcy case she prepares. The Court finds that amount of time greatly exceeds the time needed to complete the limited tasks a bankruptcy petition preparer can perform. Therefore, the Court must reject the vast majority of Ms. Burnworth's testimony relating to time estimates.
Rather, the competent evidence presented at the evidentiary hearing was supplied by two paralegals employed by law firms specializing in bankruptcy law. The testimony was consistent and clear that the secretarial typing and copying functions performed by them in the preparation of a simple consumer Chapter 7 bankruptcy took approximately one and one-half hours to complete. The time included instructing prospective debtors on how to complete the bankruptcy questionnaire, receiving and reviewing the questionnaire completed by the debtor, inserting the information on the computerized bankruptcy forms, making the necessary copies and otherwise preparing the package *307 for filing with the Bankruptcy Court. (Transcript, pages 8-10, 19-21.) The time estimate was generous and included additional time to communicate with the debtors and to ask them limited questions. However, the time estimate of one and one-half hours does not include time for many of the additional tasks appropriately performed by these paralegals employed by and under the supervision of an attorney.
Nor does the one and one-half hours include an allowance for all the inappropriate, non-compensable services provided by Ms. Burnworth. For example, Ms. Burnworth testified that she would review and interpret credit reports of prospective debtors to help them complete their bankruptcy schedules. (Transcript, page 26.) At other times, Ms. Burnworth would sit with prospective debtors and read legal treatises together to jointly determine which exemptions the prospective debtors can claim. (Transcript, pages 23, 43, 45-46.) As Ms. Burnworth testified:
I sit with them. I go through the bankruptcy book with them. I let them read that sheet regarding all the different chapters. Again, if they have any questions regarding that, I refer back to the bankruptcy book and I answer any questions as we look at it together.
These are the types of services that are not compensable when performed by a bankruptcy petition preparer. To the extent Ms. Burnworth actually performs these services, she is giving unauthorized legal advice and cannot expect to receive compensation for her time. Rather, a qualified bankruptcy petition preparer who performs tasks within the guidelines of Section 110 of the Bankruptcy Code should spend no more than one and one-half hours on the allowed secretarial tasks.
At the evidentiary hearing, Ms. Burnworth argued that she is more than a bankruptcy petition preparer; she is a "para-professional." First, Section 110 limits compensation to non-attorneys for only those services allowed under Section 110 of the Bankruptcy Code. Second, Florida law is clear that a non-lawyer who is not supervised by a lawyer has a very limited role. "The Florida Supreme Court and the Florida bankruptcy courts have made it clear that persons wanting to provide services in the bankruptcy area are limited to typing and transcribing written information provided to them by a consumer onto pre-prepared forms." Samuels v. American Legal Clinic, Inc. (In re Samuels), 176 B.R. 616, 621 (Bankr.M.D.Fla. 1994).
Ms. Burnworth cannot argue that she should get paid for additional work or services performed because she fits into some new category. She is a bankruptcy petition preparer assisting a debtor in preparing documents for filing before bankruptcy court. Her role is limited to that of a secretarial copier and transcriptionist.
Ms. Burnworth is not working with an attorney who supervises her actions. The relevance of the testimony of the paralegals, who are supervised by attorneys, is that they were able to credibly quantify and estimate the time needed to complete jobs for which a bankruptcy petition preparer, like Ms. Burnworth, can expect to receive reasonable compensation. They estimated that they spent no more than one and one-half hours on these services. The Court accepts that testimony. Without the showing of extraordinary circumstances supported by contemporaneous time records, the Court finds that a bankruptcy petition preparer would spend one and one-half hours associated with all allowable and compensable tasks necessary to file a consumer Chapter 7 bankruptcy case.
*308 Therefore, the next question is the proper hourly rate at which to compensate Ms. Burnworth for the assumed one and one-half hours of time she spent on allowable compensable work in the cases of these two debtors. The paralegals that testified have an hourly billable rate of $75.00 to $85.00. (Transcript, pages 27-28.) The billable rate includes the law firm's overhead and other expenses. Ms. Burnworth testified that her hourly billable rate, including all overhead expenses, is $75.00 per hour. Ms. Burnworth provided no support or evidence to substantiate her estimate of a $75.00 per hour rate; however, because the estimate is consistent with the hourly billing rate of paralegals who perform some of the same services and because the rates billed by these law firms clearly include overhead expenses, the Court will accept the average hourly billing rate for paralegals as a benchmark for the determination of a reasonable rate. The advantage of such a benchmark is that, for future allowance purposes, the Court can determine reasonable fees by determining the relevant market rate for paralegals in the area.[3]
The Court recognizes that paralegals perform many more services than Ms. Burnworth can provide. Paralegals work under the supervision of an attorney. However, the Court cannot ignore the fact that paralegals also perform services similar, to a limited extent, to those which Ms. Burnworth can legally provide as a bankruptcy petition preparer.
In conclusion, in these two cases and in future cases, the Court holds that a bankruptcy petition preparer can spend one and one-half hours completing a consumer Chapter 7 bankruptcy case, subject to any showing of exceptional circumstances, and the production of detailed, contemporaneous time records. The allowable hourly rate will be determined by the average hourly billable charge for paralegals in the market area, here, $75.00 per hour. The Court holds that a reasonable fee for Ms. Burnworth's services in each case is $112.50 (1.5 hours × $75.00/hour). Therefore, in the case of Ms. Landry, Ms. Burnworth is entitled to a reasonable fee of $112.50 and must return to the debtor $162.50 ($275.00 - $112.50 = $162.50), the amount overpaid by the debtor. In the case of Mr. and Mrs. Pearson, *309 Ms. Burnworth similarly is entitled to a reasonable fee of $112.50 and must return to the debtor $137.50 ($250.00$112.50 = $137.50), the amount overpaid by the debtors. A separate order consistent with this ruling will be entered.
NOTES
[1] Unless otherwise stated, all references to the Bankruptcy Code refer to Title 11 of the United States Code.
[2] After filing the initial pleadings on behalf of Mr. and Mrs. Pearson, Ms. Burnworth prepared motions for the debtors seeking to avoid liens under Section 522(f) of the Bankruptcy Code. Motions to avoid liens are complicated legal documents well beyond the scope of tasks a bankruptcy petition preparer legitimately can complete. The Court cannot imagine a scenario in which such a form could be considered a simple legal form that the debtors could independently complete and then hand to a bankruptcy petition preparer for typing. Thus, to the extent that Ms. Burnworth prepared motions to avoid liens, she exceeded the permitted scope of her authorized services under Section 110 of the Bankruptcy Code and shall receive no compensation for these subsequent pleadings filed on behalf of Mr. and Mrs. Pearson.
[3] Courts have employed a variety of methods for determining and computing bankruptcy petition preparer fees. See In re Moran, 256 B.R. 842, 849-51 (Bankr.D.N.H.2000) and Guttierez, 248 B.R. at 298-99 (compiling a summary of cases on the issue). For example, some courts have capped fees or limited fees to a flat rate. See In re Cochran, 164 B.R. 366, 369 (Bankr.M.D.Fla.1994) ($50.00 is a reasonable fee where no evidence was offered justifying a higher fee); (Guttierez, 248 B.R. at 299 (limiting fees to $50.00)); In re Wagner, 241 B.R. 112, 122 (Bankr.E.D.Pa. 1999) (same); In re Mullikin, 231 B.R. 750, 753 (Bankr.W.D.Mo.1999) ("absent special or extraordinary circumstances" petition preparers could charge a maximum of $150.00). Other courts have regulated or limited petition preparers' hourly rates. See In re Hartman, 208 B.R. 768, 780 (Bankr.D.Mass.1997) ($20.00 per hour); In re Kassa, 198 B.R. 790, 792 (Bankr.D.Ariz.1996) ($16.82 per hour). Some courts have chosen to limit hourly rates and the allowable number of hours a petition preparer can spend. See In re Moffett, 263 B.R. 805 (Bankr.W.D.Ky.2001) (hourly fee of $20.00 with maximum fee not to exceed $100.00); Moran 256 B.R. at 850-51 (allowing $20.00 per hour plus $10.00 per hour for overhead, not to exceed five hours; however, amounts may change subject to evidence presented on overhead, inflation, or other economic considerations). Finally "[o]ther courts have declined to adopt a blanket rule regarding petition preparer fees," preferring to "monitor petition preparers' practices and fees . . . on a case by case basis." Moran, 256 B.R. at 849-50 (citing Consolidated Memorandum Regarding Bankruptcy Petition Preparers, 1997 WL 615657 (Bankr.D.Me. Sept. 19, 1997)).